We'll hear Greer v. Moon, 21-412A. All right. Whenever counsel is ready, we'll hear from the appellant. Good morning, Your Honors, and may it please the Court. Gregory Keenan of the Digital Justice Foundation, appearing on behalf of Appellant Russell Greer. I'd like to reserve three minutes for rebuttal if I may. The Kiwi Farms community has engaged in years-long orchestrated harassment attempts against Mr. Greer. Pertinent here, one of the ways in which the community has targeted and harassed Mr. Greer is by violating his copyrights. In response to this, Mr. Greer did what Congress instructed a copyright holder to do. He sent a notice of takedown, he identified the particular and specific instances of infringement on the website, and he sent it to Defendant Moon. In response, Defendant Moon did anything but what is ordinary. Two things in particular contributed to infringement were highly aberrant behavior for a website operator. One, he weaponized the DMCA takedown publicly. Sorry, Your Honor, he weaponized it. Taking the notice and takedown that's meant to resolve disputes and streamline disputes and keep them out of court, and to reduce and mitigate infringements, and instead putting the infringements, the specific links, identifying the works, promoting that and publicizing that DMCA notice and takedown to the very infringers and to the very harassers who had been bothering Mr. Greer for all these years. Second, he just ignored the notice and takedown and he left the infringement work up. So, Counsel, with respect to that second part, what supports that theory of contributory infringement, just leaving it there, doing nothing? It seems to me that the Supreme Court has foreclosed that as a viable theory. Yes, Your Honor. I respectfully disagree that the Supreme Court closed it. I would say there's both a doctrinal basis for that and a pragmatic basis. But there's no authority in our circuit for that. That's correct, Your Honor. The Ninth Circuit, originally in Napster, and then after the Ninth Circuit doubled down on its interpretation of that theory of liability. But you don't need the Ninth Circuit, do you? I mean, can we resolve this case under diversity? Absolutely. Why is that? Several reasons. So, this Court's existing jurisprudence on contributory infringement, for the second element of it, merely requires that someone materially contribute or encourage the types of known infringements. Here, that's precisely what Defendant Moon did, and he did it in three general ways. So, one is using the notice and takedown itself, which has specific links to direct infringements, and publicizing it to this community of people. Before you get to two and three, I did not see, in your response to the motion to dismiss, or in the complaint, that you had alleged contributory infringement based on the posting of the notice and takedown. Did I overlook it? I believe the complaint does state that Mr. Moon did, as a factual matter, post the notice and takedown, and it also alleges that after that, there were increased infringements that occurred. So, are you saying that you did alert the District Court through the complaint and or the response to the motion to dismiss, not only that the notice and takedown was posted, and that there were subsequent infringements, but that you were predicating a theory of liability under Broxner, based on the posting of the notice and takedown? I would say that the Pro Se Complaint made factual allegations. I don't believe it artfully pled that particular theory of liability. A little bit less than, I mean, that. I don't think it pled the theory at all, did it? I mean, even if we, even if it's a Pro Se Complaint, I'm not sure you can get there. Well, I think the factual allegations, if I may, do create three different factual bases for contributory infringement under this Court's existing jurisprudence, and I'll start with the third one, because it's the one that the Plaintiff below did predicate his theory on, which is the generalized statements that encouraged or authorized the Kiwi Farms users to think that perhaps they could treat Mr. Greer's copyrights in this fashion. So when one submits a DMCA notice and takedown to the Kiwi Farms website, there are all these kind of disparaging remarks on there. So I believe one, if I may quote from 1 APP 203, or sorry, 209, it says, if you still want your garbage legal letters to end up in the dumpster, you can send them to legal at Kiwi Farms. Also there was a comment about the Kiwi Farms and the FAQ section of its website says, we don't host well-known copyrights, although the Plaintiff was pleading that the suggestion, and the suggestion made to this community that attacks people who are not so well-known, that was an open invitation and understood in that context to be an open invitation to treat these lesser-known copyrights with disregard. So, Counselor, are you, just picking up from Judge Moritz's question, are you contending that the pro se amended complaint contained all of the facts that would be necessary to infringement under diversity? Yes, Your Honor, I do think it, for that particular basis about the FAQs, did submit a factually sufficient basis, and the factual allegations about the notice and takedown posting, the weaponization of it, the sharing of specific links, while the theory itself wasn't, that theory itself wasn't artfully put, the factual basis for that was in that, was in the complaint, we would argue. But I also do think it's important, while it does state a claim under this Court's existing jurisprudence in diversity, the question is raised on appeal whether or not this Court would follow the Ninth Circuit, notably the District Court below simply said that this Court hadn't yet expressed its views on that. And so we do think it's important the Court clarify for parties and the Courts below alike, does this Court follow the path adopted by the Ninth Circuit in Napster and Amazon, or does it chart a different course? The reason that that theory is a viable theory is because from a pragmatic perspective, once you're put on notice that there's a particular specific infringement on your website, and you just choose to leave it up, that is materially contributing. And the reason it's materially contributing is because what in effect is actually happening is that infringement material is being broadcast worldwide. The, it has a lot of emotional appeal to me, a lot of pragmatic appeal, but I don't, so I'll ask you I think a hard question, number one, how do you harmonize that with Grogster and doesn't that, I mean, for example, you rely on gold state on copyright, well gold state on a copyright, you cite 8.0 and 8.1.2, gold state specifically says that very theory of Napster absolutely cannibalizes Sony, because what it does is it sets up knowledge and concerted action as alternatives, and actually under Sony, both knowledge and concerted action are required. And so your argument based on Napster and Perfect Ten seems to take concerted action out of the equation. And that seems to be the heart of Grogster. Yes, Your Honor. Actually, I don't think there's any tension whatsoever between the Ninth Circuit's approach and Grogster and Sony, so I'm going to have to start with Sony, and I apologize for the miscite to Goldstein. You didn't miscite it. Oh, okay. You didn't miscite it. Importantly, both those cases are creating new theories that don't foreclose different theories. So in Sony, the idea was someone isn't themselves sharing a work, what they're doing is they're putting out a product. In fact, they're not sharing any work, right? They're sharing blank tapes. The question was, could you be held liable for the mere furnishment of the product? And NIMR on copyright draws this distinction between a category of cases where the liability is predicated on the product, or other cases where it's predicated upon actions taken by persons. So here, for example, we're not relying on the Grogster and Sony theories that rely on saying you furnished a product, and because of that product and its intended uses, we could infer some sort of intent. Rather, we're pointing to specific acts taken by a person to share the work in particular. So this has nothing to do with the architecture of the QE Farms website, for example. And so in Sony, the precise question was, the court was addressing, well, you're selling something that has both legitimate uses and illegitimate uses. Can you infer from the ability to use it illegitimately that you should be liable? The answer was, no, that's not enough. But in that case, there weren't specifically identified instances of infringement, and the defendant wasn't sharing the work themselves, taking action. It was a theory of liability predicated entirely on the design of the product. But doesn't Grogster require an affirmative step of some kind? I mean, it seems I'm really troubled by a footnote in Grogster. I can't quite reconcile it with your argument, where the court says that in the absence of other evidence of intent, a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement. I mean, that just seems to me to be inconsistent with the Ninth Circuit. We're not in the Ninth Circuit. And even to get to your arguments about adopting the Ninth Circuit, you have to get through a couple of other hurdles. So I just want to better understand how the complaint in this case, the pro se complaint, satisfies what we've said in diversity about the third element, to the extent we've really spoken on it, that there's authorized, that something has been authorized, that contributory infringement is satisfied by that kind of affirmative authorization. Sure. Just very quickly, I'd like to say that Grogster does say that Sony did not displace other theories of secondary liability, and that Nimmer says that what Grogster was articulating was a new theory, a third theory of liability, distinct from contributory and vicarious. So I do think there is support for the Ninth Circuit's view. Directly addressing your question, Your Honor, authorization, I think it's important, and we briefed this a little bit, there is, in the common law, the act of mission distinction isn't as rigid as you might think. So when you hear the word authorization or cause, it sounds like it has to go directly to the defendant here, but this Court has used terms such as encourage and materially contribute. And again, the pro se complaint, when it pled that essentially there's invitations to treat the targets of the Kiwi Farms website as second class copyright citizens, was encouraging the users, and they did bite on that encouragement to treat these users differently than you might someone with more status. And also, again, the line on the website about if you want to send your notice and takedown, throw it in the trash, I think it's a pretty clear indication what they're trying to convey to their users, and it's a pretty clear indication that the users are picking up on that message. I do think, although it's not the poster child of an ideal complaint, for a pro se, I do think it would readily satisfy the Ninth Circuit's opinion, which does have reason to support it. I'll rest, if that's okay. Thank you. Thank you. Good morning, Your Honors, and may it please the Court, my name is Greg Skourtis, and I'm the attorney for Kiwi Farms and Mr. Moon. I had a number of flights canceled yesterday and ultimately got here about 2.30 this morning, so I apologize if I seem a bit disheveled, I also forgot my razor. That's okay. The Court below really took some painstaking efforts to try to explain the reasoning of her ruling here, and gave, I believe, the appellant here every opportunity to amend his complaint. The counsel repeatedly refers to it as a pro se complaint, and that's entirely true and it's entirely appropriate. But pro se complaints still have to have some merit, and they still have to have something from which a judge could find what the pro se plaintiff is asking. So the judge goes through, I think she does a very, very good job here, perhaps even better than our briefs, the standard by which a court must rule in a 12B6 motion to dismiss, and assess whether the plaintiff's complaint alone is legally sufficient to state a claim from which relief can be granted, citing tenth circuit opinion. She then goes on to talk about the pro se complaint and cites the 1991 Hall decision from this Court that indicates that a pro se plaintiff's complaint should be construed liberally and held to a less standard than formal pleadings drafted by lawyers. Notwithstanding that, Your Honor, this particular plaintiff has some, as we've seen from the record, some history as a litigant. This isn't something that he just pulled out of his hat. In fact, the claim that first started this was the result of him writing a book. Well, okay. But I just want to make sure, you're not suggesting that we evaluate pro se, the liberality of construction, based on the sophistication of the litigant? No, no, no. I'm not at all. I just wanted to make sure you weren't going there. Absolutely. I think that the Court's standards with respect to pro se litigants is entirely appropriate. And I think that the judge gave him every deference she possibly could have. But the underlying claim involved a book that he wrote entitled Why I Sued Taylor Swift. And attached to that book were some of his works and things like that. And I think it's important to note that what happened was he sued Taylor Swift because he wrote a song that he thought she should have published, she should have written. He also sued Ariana Grande. I don't understand why that matters. His history can't be relevant to what we're looking at here, can it? Well, I think it's ... I understand what you're saying. I think it's relevant in the sense that when we file our motion to dismiss, and the judge has that under her belt and she's starting to look at that. Instead of addressing the motion to dismiss, instead of addressing the issues that we had raised in that, instead of addressing the insufficiency of his arguments, he attacks me in some pretty aggressive ways because I represented Taylor Swift, apparently. And he attacks the judge later on for not adopting the Ninth Circuit opinion. Rather than going through and reanalyzing his complaint and fixing the problems which we had pointed out in our motion to dismiss, he instead takes the offensive against everyone he could and does nothing to change his complaint. Well, yeah. I mean, if there's a contest between good actors, I don't know that you want to necessarily take on that fight. But let me ask you a question about this. So given the fact that the plaintiff is a pro se litigant, and Kiwi Farms is on its site dedicated to the, I'm not going to quote it correctly, the humiliation of disabled on the website, and Mr. Moon posts this song, obviously ridicules Mr. Greer, and then posts the notice and takedown, and under the umbrella that, yeah, if you want your correspondents to end up in the trash can, obviously these 6,000 people or so that follow Mr. Boone are, a large part of them, are for some reason wanting to humiliate Mr. Greer and embarrass him and other disabled individuals. And so when you talk about Rockster taking affirmative steps to induce or encourage another's copyright, including, I think, one of the posts saying, yeah, to get the song, or to get the book, hit this link so that you don't inadvertently get money to Mr. Greer. Why isn't that, the filing of the notice of takedown, given the context, an obvious affirmative step to encourage or induce infringement? I think it's just the opposite. I think it's a post to say, this individual has objected to what we've done here. We think this is fair game. We think this is free for us to post, but we want you to know that this individual has asked us to take this down. He doesn't aid and abet, and I'm sorry, I'm back to my criminal practice, but he doesn't encourage or induce others to jump in and make the comments that they did, and that's the third prong. That's part of Rockster that he can't meet here. We're not looking at whether he's inducing them to make comments. We're looking at whether he's inducing them to continue infringing, right? Sure, sure. And so what I'm looking at in the complaint, the pro se complaint, is perhaps not the most sophisticated articulation of legal theories, but fled fact, the chronology of facts that begin with the book, that in the middle have the posting of the takedown notice, that then follow after that is more infringement by the users of your client's website. So it seems that that states a plausible claim, and your argument might be availing, but not at this stage, right? I understand, and I guess it's a matter of interpretation here. What we're trying to say is that he merely permitted the infringement. He didn't induce it. He didn't take it to the, and I know I haven't answered your question very well yet. How about encouraged? Pardon me? Encouraged. Encouraged the infringement. Certainly did that, didn't he? I don't, by posting something, I think that Rockster requires a little more than that. I think that we're, we, you can set up these sites, and I'm not saying that Kiwi Farms ought to get a trophy. By posting the notice, he attracted even more attention to this whole point. Arguably. We don't know that. I mean, that's a good point. Step dismissive. Sure, sure, absolutely. And certainly there are ways that Kiwi Farms could have done this that would have made a lot more sense. But he posts it, he puts it up there for public comment, for the comment of his people, for criticism, the kind of things that are allowed under the law, and for, I guess, dialogue about that. Not necessarily to encourage people to download it and steal it and violate his copyright. I think there is a distinction under the Communications Act. And I realize that he tiptoed around this a little bit and probably could have been more delicate about it. And certainly the plaintiff here had reason to feel that he was being belittled by what happened. But I don't know that that reaches the level of contributory copyright infringement or any of the torts that the judge threw out below. Counsel, did the judge apply the correct legal standard when she, in her ruling in your favor, focused on encouraging what she said was the initial infringement? I'm trying to figure out what that means. Can you help me with that? Well, I think she did apply the initial standard, the correct standard. And what she found was that the three prongs here, she found that there was direct copyright infringement by a third party, that Moon knew about that, but that he didn't intentionally cause, induce, or materially contribute to the direct infringement. So I think that is the standard from the Supreme Court in Savant Holmes v. Collins, and that was the appropriate standard. Where does initial come from? Initial infringement? I mean, if the district court was looking at this case and applying those factors perhaps to the book, then that sort of makes sense. But it seems that the focus on initial infringement reads out of Mr. Greer's complaint, the infringement that took place after your client posted the takedown notice. Would you agree with that? If the takedown notice itself is an infringement, and I know that that's not what you're saying here, that I don't, I guess I don't necessarily agree with that. I don't think that that's enough. I don't think that that's really what the court below was trying to say. Okay, so we should read the word initial sort of out of her ruling. I guess I'm still not quite sure what to do with it. Yeah, and I understand. I don't know that there's an answer to that. I don't know what the intent was of that language, but I think in the broader picture of the ruling, she does make a fairly compelling explanation of why she did what she did and how she followed the law and how that came about. So, unless there's anything further, I don't have anything for the court. Thank you. Thank you. In response, I'd just like to touch on three points quickly. I think it's important to focus on the encouraged aspect of the element as well. I think that makes it broader than perhaps authorization would lend one to believe. I also think it's important to focus on the audience here. So, the posting of the notice and takedown, if someone shared a notice and takedown with us, I don't think any of us would run off to go infringe people's copyrights, I think the context of what audience the messages were being sent to matters. And just regarding the posting of the notice and takedown, it's important what it is, what Mr. Moon posted. He posted infringing links of the works in specific locations. And I understand that the pro se did not put his theory around that as anywhere near as well as perhaps it should have been. But anyone who posts infringing links in that type of forum, where there then is subsequent further infringements, I mean, I think that's textbook infringement. And certainly with the subsequent infringements, we don't have to guess very hard that it had its natural intended result. And I think that touches on the question regarding what the district court was saying with the initial component. I think that did improperly discount the fact that after this notice and takedown was posted and after the defendant's actions were done, there was an uptick in infringements. And I don't think that's an unnatural consequence of that sort of behavior. What limiting principle do we apply? I mean, a lot of law schools post takedown notices, you know, as an educational tool. I don't know that there's any cases anywhere that have said that the posting of a takedown notice could itself constitute an affirmative act for contributory infringement. So where do we draw the line? Sure. I think a clear limiting principle in this particular case, although it wouldn't be an easy one in every case, I understand the concern, goes to the audience side, right? Again, a law school class, I don't think anyone's going to rush out and... May I finish that? Sure, sure. A law school class, no one's going to rush out and start infringing people's copyrights when they get a notice and takedown. I mean, this community is dedicated to harassing these people and they did exactly what, you know, would be expected of sharing it here. So I think a limiting principle in this particular case is just how idiosyncratic the fact pattern is here. Thank you, Your Honors. All right. Thank you. This matter is submitted.